ORIGINAL

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____
DATE FILED: 4/19/07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALBERT BRADLEY,

Petitioner,

- against -

JOHN BURGE, SUPERINTENDENT, AUBURN CORRECTIONAL FACILITY,

Respondent.

06 Civ. 0040 (JGK)

OPINION AND ORDER

94578

JOHN G. KOELTL, District Judge:

New York State prisoner Albert Bradley ("the petitioner") brings this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On July 21, 2000, the petitioner was convicted after a jury trial in the New York State Supreme Court, Bronx County (Fisch, J.), of two counts of rape in the first degree and one count of attempted sodomy in the first degree. The petitioner was sentenced, as a second felony offender, to two consecutive terms of 18 years for the rape counts and to a concurrent term of 8 years for the attempted sodomy count, for an aggregate term of 36 years imprisonment. The petitioner appealed to the New York State Supreme Court, Appellate Division, First Department, which, on June 22, 2004, unanimously affirmed the petitioner's judgment of conviction. The petitioner's application for leave to appeal to the New York Court of Appeals was denied on September 20, 2004 (Ciparick,

MICROFILM
APR 23 2007 -9 AM

J.). In his current petition, the petitioner challenges his conviction on two grounds. First, the petitioner alleges that the Appellate Division erroneously rejected his sufficiency of the evidence claim and his prosecutorial misconduct claim. Second, the petitioner alleges that the Appellate Division erred in holding that his right to present a defense claim was unpreserved. For the reasons that follow, the petition for a writ of habeas corpus is **denied**.

**I.**

**A.**

The evidence at trial established that at approximately 9:00 p.m. on May 11, 1998, thirty-year-old M.R. was raped inside her two-bedroom apartment in The Bronx. (Trial Tr. ("Tr.") 4-9, 15.) M.R. testified that a man entered her bedroom through a fire escape while her three young children were sleeping in the second bedroom. (Tr. 4-9.) M.R. alleged that when the intruder entered her bedroom, the television was illuminating the room and remained on throughout the incident. (Tr. 27, 39, 67.) She described her attacker as 5'7" tall, dark-skinned, in his early thirties, with a wide nose, full lips, brown eyes, Jamaican accent, and in need of a shave. (Tr. 21-22, 45, 48, 64.)

After entering M.R.'s bedroom, the assailant looked inside the room where M.R.'s children were sleeping and then pushed M.R. back into her bedroom and locked the door. (Tr. 10-11, 28-

29.) Inside M.R.'s bedroom, the attacker covered the victim's face with a blanket, slapped her, told her to shut up and that he had a gun. (Tr. 11-12, 44.) To scare her assailant, M.R. told him that she had HIV and convinced him to use a condom that she retrieved from a drawer. (Tr. 12-13.) The intruder then raped M.R. and attempted to sodomize her. (Tr. 14-16.) After this incident, M.R. was dragged to the bathroom and forced to shower. (Tr. 16-17.) She was then pushed back into her bedroom and the attacker exited her apartment through the fire escape window. (Tr. 17-18, 20.) Once M.R. was assured that she was alone in the room, she called a friend who called the police, and then called the police herself. (Tr. 20-21.)

After the police arrived, M.R. was taken to the hospital. (Tr. 21.) When questioned by hospital staff about the incident, M.R. stated that she could not recall the perpetrator's face. (Tr. 61-63, 76-77.) However, on July 28, 1998, M.R. viewed a lineup and identified the petitioner as the man who raped her. (Tr. 22-23.) M.R. was a "[h]undred percent" sure that she selected the right person because she would never forget his face. (Tr. 35.) She also identified the petitioner at trial. (Tr. 23.)

On July 13, 1998, M.N. was raped in her third floor, one-bedroom apartment in The Bronx. (Tr. 85, 90-91.) M.N. shared the apartment with her boyfriend, her boyfriend's son, and the

son's girlfriend. (Tr. 85.) The apartment had a fire escape attached to the living room window. (Tr. 88.) At approximately 3:00 a.m., M.N. was home alone talking on the phone in the bedroom when she heard a noise in the living room and went to investigate. (Tr. 87-88.) The fire escape was attached to this living room. (Tr. 88.) M.N. turned on the light switch in the living room and saw a man standing next to her. (Tr. 88-89.) M.N. testified that she was able to see his face while the light was on, but then he used her hand to turn the light switch off. (Tr. 89.)

M.N. described the intruder as a Jamaican black man with braids, wearing jeans, a polo shirt, sneakers, hat, gloves, and had "red sad eyes." (Tr. 90, 92, 96-97, 107.) After M.N. was forced to turn off the light, the intruder placed a knife to her neck, threw her telephone aside, took her by the hair, and threw her down on a mattress on the living room floor. (Tr. 89-90.) The man removed M.N.'s clothing and raped her on the mattress. (Tr. 90-91, 115.) M.N. testified that the assailant was already wearing a condom when he pulled down his pants. (Tr. 90, 108.) The incident was interrupted when there was a noise that sounded like someone putting a key in a door. (Tr. 91.) Upon hearing the noise, the man pointed a pistol at M.N.'s head, told her to stay quiet, and left through the fire escape. (Tr. 92, 109.) After he was gone, M.N. washed herself with alcohol and

showered. (Tr. 92-93, 110-11.) M.N.'s boyfriend called the police when he came home and M.N. was taken to a hospital. (Tr. 93, 111-12.) On July 28, 1998, M.N. selected the petitioner from a lineup. (Tr. 100.) M.N. recognized the petitioner's eyes and was "sure" that the man she identified in the lineup was the man who raped her. (Tr. 101.) M.N. also identified the petitioner at trial. (Id.)

On July 27, 1998, Luis Nelson, a retired New York City Police Officer, was inside his apartment in The Bronx, when at approximately 11:00 p.m., he heard noises coming from his fire escape. (Tr. 120-23.) Mr. Nelson looked out the window that the fire escape was attached to and saw a shadow. (Tr. 122.) Then the doorbell rang, but when Mr. Nelson opened the door, no one was there. (Id.) Mr. Nelson then called the police to report the incident. (Tr. 123.) The doorbell rang for the second time, but again, there was no one there. (Id.) Mr. Nelson returned to the window and observed a person through the partially opened blinds. (Tr. 123-24.) Mr. Nelson described the person as "a male black, approximately six foot tall," wearing camouflage pants and a white tank top with a pony tail on the top of his head and braids hanging underneath. (Tr. 125-26.) This man then ran down the fire escape. (Tr. 124.) When the police arrived, Mr. Nelson described the person to them. (Tr. 147.) Officer Brendan Nolan and his partner, Officer

Eileen Rosa, were given the description and were searching the area when they saw the petitioner walk in front of the apartment building wearing headphones, a maroon shirt, blue jeans, with braids in his hair that were pulled back in a pony tail. (Tr. 203-04, 226-27.) The petitioner was "sweating heavily" and carrying a plastic bag that contained camouflage pants. (Tr. 204-05, 208.) The petitioner was held for a show-up identification procedure, in which Mr. Nelson identified him as the man he saw on the fire escape. (Tr. 128, 149-50, 205-06.) The petitioner told Officer Nolan that he was coming from his brother's home on Bainbridge Avenue, so the police went there to investigate. (Tr. 232-35.) That evening, the petitioner was charged with public lewdness and criminal trespass in the second degree.[1]

During the cross-examination of Detective Maritza Ortiz, defense counsel attempted to elicit information about the arrest of Roger Moore, a suspect in a series of pattern rapes occurring in the area where M.R. and M.N. were raped, and inquired whether Detective Ortiz was aware that Roger Moore was also a suspect in the M.R. and M.N. rapes. (Tr. 187-88.) The prosecutor objected to this questioning and the court sustained the objections.

---

[1] The trial court agreed to dismiss the charges of criminal trespass and public lewdness prior to jury deliberations and prior to the testimony of the petitioner's final witness. (Tr. 400-01.) The only remaining charges against the defendant were two counts of rape in the first degree and one count of attempted sodomy in the first degree. (Id.)

(Tr. 188.) The court and counsel then had a brief off-the-record discussion at the bench that continued in the robing room outside the hearing of the jury. (Tr. 189.) The record does not reflect the robing room discussion.

During the cross-examination of Officer Nolan, defense counsel asked whether the officer was called to Bainbridge Avenue on July 27, 1998 in response to a mobilization effort to apprehend a pattern rapist. (Tr. 218-20.) Officer Nolan testified that he did not know whether the call was regarding a pattern rapist. (Tr. 220.) Defense counsel attempted to refresh Officer Nolan's recollection, to which the prosecutor objected, and a brief discussion was held at the bench. (Tr. 221.) The trial record does not reflect the substance of this discussion. The trial judge then sustained the objection and defense counsel took exception to the ruling. (Id.)

Prior to the testimony of the petitioner's final witness, the court agreed to dismiss the charges of criminal trespass and public lewdness. (Tr. 400-01.) During summation, defense counsel stated to the jury that "we don't need to be concerned about July 27th" because the crimes charged on that day were dismissed. (Tr. 437.) However, defense counsel proceeded to discuss the events of July 27, 1998 when describing the circumstances of the petitioner's arrest. (Tr. 441-43.) Following defense counsel's summation, the prosecutor, in his

summation, referred to the petitioner's presence on Mr. Nelson's fire escape on July 27, 1998 in the context of discussing the credibility of the testimony of one of the petitioner's witnesses and in describing the circumstances of the petitioner's arrest. (Tr. 459-63.) Neither party objected to the remarks made regarding the events of July 27, 1998 during the course of summations.

**B.**

The petitioner appealed his conviction to the Appellate Division, First Department, and argued the same claims advanced in the present petition. In an opinion dated June 22, 2004, the Appellate Division unanimously rejected all of the petitioner's claims. People v. Bradley, 778 N.Y.S.2d 687, 687 (App. Div. 2004). With respect to the petitioner's sufficiency of the evidence claim, the court held that "[t]he verdict was based on legally sufficient evidence and was not against the weight of the evidence." Id. With respect to the petitioner's claim that he was erroneously prohibited from presenting a defense, the court held that the trial court properly precluded the petitioner from introducing evidence of third-party culpability because "[t]he possible connection of another person to the crime was too speculative to have any probative value." Id. The court also found that, to the extent the petitioner was asserting a constitutional claim that he was entitled to

introduce such evidence, the claim was unpreserved and the court declined to review it in the interest of justice. Id. The court also noted that had the claim been preserved, the court would hold that there was no violation of the petitioner's right to present a defense. Id. The court also noted that it considered the petitioner's remaining contentions and found them to be "unavailing." Id.

On September 20, 2004, the petitioner's application for leave to appeal to the New York Court of Appeals was denied, People v. Bradley, 3 N.Y.3d 704 (2004), and as a result, the Appellate Division was the last court to issue a reasoned decision in the petitioner's case. The petition in this case is dated December 13, 2005.[2]

## II.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief to a state prisoner on a claim that was adjudicated on the merits in state court only if it concludes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an

[2] On July 26, 2006, this Court requested that the respondent file a supplemental response explaining the relevance, if any, of the Supreme Court's decision in Holmes v. South Carolina, 126 S. Ct. 1727 (2006), and extended the petitioner's time to reply to the respondent's supplemental response.

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); see also Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006); Walker v. Girdich, 410 F.3d 120, 122 (2d Cir. 2005). "Clearly established Federal law" refers only to Supreme Court "holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000).

**A.**

The petitioner's first claim alleges that the weight of the evidence was insufficient to convict him where the only evidence linking him to the crimes were lineup identifications by the victims and where the prosecutor presented prejudicial propensity evidence in summation. (Petr.'s Pet. 3.) Specifically, the petitioner claims that the victims' positive lineup identifications were insufficient evidence to sustain his conviction where no other physical or forensic evidence linked him to the crimes. (Id.) The petitioner also claims that the prosecutor, in his summation, "argued implicitly that if petitioner was on the fire escape the night he was arrested, then he was more likely to have been the man who had broken into [M.R.'s] and [M.N.'s] apartments through their fire escape." (Id.)

1.

It is well-established that "[i]n challenging the sufficiency of the evidence to support his conviction, a defendant bears a heavy burden." United States v. Giraldo, 80 F.3d 667, 673 (2d Cir. 1996). The evidence is viewed "in the light most favorable to the government, drawing all inferences and resolving all issues of credibility in the government's favor." Id. (internal quotations and citations omitted). In a habeas corpus challenge to the sufficiency of evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Weight of the evidence and witness credibility issues are for the jury. See Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996). The prosecution need not disprove "every possible hypothesis of innocence." United States v. Roldan-Zapata, 916 F.2d 795, 802 (2d Cir. 1990) (internal quotations omitted).

The Appellate Division's rejection of the petitioner's sufficiency of the evidence argument is not contrary to or an unreasonable application of clearly established federal law pursuant to 28 U.S.C. § 2254(d). Assessment of the weight of evidence is for the jury and is not grounds for reversal. See Maldonado, 86 F.3d at 35. Reviewing the evidence in a light

most favorable to the prosecution, a rational juror could have found the petitioner guilty beyond a reasonable doubt of the crimes charged based on M.R.'s and M.N.'s positive lineup identifications of the petitioner shortly after their rapes and their identifications of the petitioner at trial. Although no physical or forensic evidence linked the petitioner to the rapes, the absence of such evidence was fully explained at trial. In M.R.'s case, the assailant wore a condom and forced M.R. to shower after he raped her. (Tr. 16-17.) In M.N.'s case, the assailant wore a condom and gloves and M.N. washed herself with alcohol and showered after she was raped. (Tr. 90, 92, 110-11.)

**2.**

The petitioner argues that his conviction was the result of prosecutorial misconduct based on the prosecutor's summation. The petitioner contends that the prosecutor's reference to his presence on the fire escape was improper propensity evidence. It is well-settled that in order for a prosecutor's comments in summation to reach the level of a constitutional violation, the remarks must "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1973); see also Gonzalez v. Sullivan, 934 F.2d 419, 424 (2d Cir. 1991). "Prosecutorial

misconduct during summation is grounds for reversal only when the remarks caused 'substantial prejudice' to the defendant." Gonzalez, 934 F.2d at 424. Moreover, a "criminal conviction 'is not to be lightly overturned on the basis of a prosecutor's comments standing alone' in an otherwise fair proceeding." Id. (quoting United States v. Young, 470 U.S. 1, 11 (1985)).

Although the charges relating to the petitioner's presence on the fire escape were dismissed, the petitioner did not object to the testimony. Furthermore, defense counsel addressed the circumstances of the petitioner's arrest in his summation. (Tr. 441-43.) Thus, the prosecutor's reference to the petitioner's presence on the fire escape appears to be responsive to defense counsel's comments about the circumstances of the petitioner's arrest. (Tr. 459-63.) The record does not reflect that "the prosecution argued implicitly that if petitioner was on the fire escape the night he was arrested, then he was more likely to have been the man who had broken into [M.R.'s] and [M.N.'s] apartments through their fire escape[s] during the preceding three months." (Petr.'s Pet. 3.) Moreover, the petitioner failed to raise any objection to the prosecutor's remarks at the time of the summation, which is a strong indication that, in the context of the trial, the prosecution's remarks were not considered to be prejudicial to the petitioner. The

prosecutor's summation did not constitute a violation of due process.

B.

The petitioner argues in his second claim that his defense was unconstitutionally limited because he was prevented from questioning the police about their search for a serial rapist in the same area where the rapes for which the petitioner was convicted had occurred and about their subsequent arrest of another individual, Roger Moore. Evidence of potential third-party culpability must be admitted when, under the "facts and circumstances" of the individual case, its exclusion deprived the defendant of a fair trial. Chambers v. Mississippi, 410 U.S. 284, 303 (1973). The rights to present a defense, to confront and cross-examine witnesses, and to call witnesses in one's own behalf are essential to the due process guaranteed by the Fourteenth Amendment. Id. at 294. However, the trial court has wide discretion to impose limitations on the cross-examination of a witness. Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). "[W]ell-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." Holmes v. South Carolina, 126 S. Ct. 1727, 1732 (2006).

The Appellate Division properly found that the petitioner's argument, to the extent that it raised a constitutional due process claim based on the ability to present a defense, was procedurally barred under state law because the argument was not raised before the trial court. See Bradley, 778 N.Y.S.2d at 687. Therefore, because there is an independent and adequate basis for denying the claim under state law, the claim is barred from federal habeas review unless the petitioner shows cause and prejudice or a fundamental miscarriage of justice, and there is no such showing in this case. See Coleman v. Thompson, 501 U.S. 722, 749-50 (1991); see also Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 633 (2d Cir. 2001).

In any event, the Appellate Division held that if it considered the petitioner's constitutional argument on the merits, it would find "that there was no violation of [the petitioner's] right to present a defense." Bradley, 778 N.Y.S.2d at 687. The Appellate Division also held that the trial court properly precluded the petitioner from introducing evidence of third-party culpability because "[t]he possible connection of another person to the crimes was too speculative to have any probative value." Id. Unlike Holmes where there was powerful evidence of third-party guilt for the offense at

issue,[3] here there was no evidence of third-party guilt beyond rank speculation. The fact that there were other rapes in the area and that another person was arrested for those rapes does not suggest beyond speculation that the other person committed the rapes at issue in this case. Unlike in Holmes, there was no other person who confessed to the offenses in this case. See Holmes, 126 S. Ct. at 1730. It was neither contrary to nor an unreasonable application of clearly established federal law for the Appellate Division to conclude that it was constitutionally permissible to exclude testimony speculating about third-party culpability.

The petitioner raises an additional claim in his reply to the respondent's supplemental response, namely that the court reporter erroneously failed to record the bench discussion and robing room discussion during the testimony of Detective Ortiz and Officer Nolan. (Petr.'s Mem. in Reply to Respt.'s Opp'n to Petr.'s Pet. 9, 18-21.) The petitioner argues that the failure to transcribe the conferences was a violation of the New York Judiciary Law § 295, which provides for a court stenographer to "take full stenographic notes of the testimony and of all other

---

[3] In Holmes, the petitioner sought to introduce the testimony of several witnesses who placed another man in the victim's neighborhood on the morning of the assault and four other witnesses who testified that this other man either acknowledged that the petitioner was innocent or admitted to committing the crimes. See Holmes, 126 S. Ct. at 1730.

proceedings in each cause tried or heard." N.Y. Jud. L. § 295. That statute also provides:

> Such stenographer shall take complete stenographic notes of each ruling or decision of the presiding judge, and when the trial is by jury each and every remark or comment of such judge during the trial, when requested so to do by either party, together with each and every exception taken to any such ruling, decision, remark or comment by or on behalf of any party to the action.

Id.

The petitioner also argues that failure to transcribe these conferences violated 28 U.S.C. § 753(b), which provides for the recording of each session of court and every other proceeding designated by rule or court order in federal district courts. This argument fails for several reasons. First, because the petitioner did not raise the argument in his initial petition and, therefore, denied the respondent an opportunity to respond to the claim, it is not a basis for relief. See United States ex rel. Morgan v. McElroy, 981 F. Supp. 873, 876 n.3 (S.D.N.Y. 1997) (declining to consider a number of "eleventh hour" claims raised for the first time in the petitioner's reply brief); see also Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999) (declining to consider the defendant's argument because it was raised for the first time in his reply brief); Playboy Enters., Inc. v. Dumas, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997)

(stating that arguments raised for the first time in reply briefs need not be considered by a court).[4]

Moreover, on its face, there is no merit to the petitioner's claims. To the extent that he is relying on 28 U.S.C. § 753(b), the argument has no merit because that statute applies only to the requirement of recordings in federal district courts, not in state courts. To the extent that the petitioner is relying on the state statute, N.Y. Jud. L. § 295, the argument is not a basis for relief in this federal habeas corpus proceeding because the violation of a state statute is not the basis for granting federal habeas corpus relief. See Pulley v. Harris, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law."); Davis v. Greiner, No. 02-CV-6802, 2003 WL 23198786, at *12 (E.D.N.Y. Oct. 30, 2003) (holding that a petitioner's claim that his sentence should be set aside because it violated a state statute was not reviewable in a federal habeas proceeding). Federal habeas relief is available to a state prisoner only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United

[4] If the petitioner had raised this argument in his initial petition, the respondent would have had the opportunity to argue that the claim was not exhausted in the state court and was procedurally defaulted. This claim was not raised in the Appellate Division. In any event, however, it is clear that the claim can be denied on the merits even if it has not been exhausted in state court. See 28 U.S.C. § 2254(b)(2).

States," which the petitioner has not demonstrated. 28 U.S.C. § 2254(a).

To the extent that the petitioner is arguing that the failure to record the conferences denied him due process, this argument also fails. At the very least, the petitioner must make some showing that the absence of the transcripts prejudiced him in his ability to appeal. See United States v. Weisser, 417 F.3d 336, 342-43 (2d Cir. 2005); Beverly v. Walker, 899 F. Supp. 900, 912 (N.D.N.Y. 1995). There is no such showing here. At most, the petitioner argues, without any support, that the conferences would have shown that he had raised his constitutional claim before the trial court—an argument that he did not make on appeal. Even if he had raised before the trial court his constitutional argument that he was denied the opportunity to present a defense, as explained above, there was no merit to that argument and the Appellate Division decided that, even if this argument were not precluded, the constitutional argument relating to the limitations on cross-examination had no merit. Therefore, the petitioner has made no showing that he was deprived of due process because the two conferences were not transcribed.

## CONCLUSION

For the reasons explained above, the petition for habeas corpus pursuant to 28 U.S.C. § 2254 is **denied**. Because the petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2254(c). The Clerk of the Court is directed to enter judgment dismissing the petition and closing this case.

**SO ORDERED**

**Dated: New York, New York**
**April 18, 2007**

**John G. Koeltl**
**United States District Judge**